

**DISTRICT COURT
COUNTY OF DOUGLAS
STATE OF COLORADO**

FILED
IN THE COMBINED COURTS
DOUGLAS COUNTY, FILED
IN THE COMBINED COURTS
OCT DOUGLAS COUNTY, CO

NOV 0 1 2024

JAMES H. MASSEY

    Plaintiff,

v.

Rithm Capital Corporation, and
NEWREZ LLC, a wholly owned subsidiary of Rithm Capital Corporation,
d/b/a Shellpoint Mortgage Servicing,
formerly known as: Specialized Loan Servicing LLC

    Successor Defendants.

Case No.: 24CV145

## COMPLAINT

## SUCCESSOR LIABILITY for
## BREACH OF CONTRACT and FRAUD

**NOW COMES**, Plaintiff, James H. Massey, pro se, and states as his Complaint against Defendants the following:

### INTRODUCTION

1. This action is for Successor Liability; Breach of an enforceable Bilateral Agreement/Contract, and fraud, resulting in damages.

2. Plaintiff, and the Predecessor Defendants were parties to an enforceable, bilateral agreement, that was entered into and consummated in the State of Colorado, County of Douglas.

3. The agreement was breached by the Predecessor Defendants with that breach occurring in the State of Colorado, County of Douglas.

4. The Predecessor Defendant(s), then being identified by the name, Specialized Loan

Servicing LLC, "SLS", was/were citizen(s) of The State of Colorado, with a principal place of business located in the County of Douglas.

5. The breach of the bilateral agreement occurred in August, 2019, and was the cornerstone for subsequent fraud occurring on the part of the Predecessor Defendants.

6. "SLS" continued to perpetuate the fraud until May, 2024, when Rithm Capital Corporation acquired "SLS" and simultaneously merged it, ("SLS"), with NEWREZ LLC, a wholly owned indirect subsidiary of Rithm. In a 5/2/2024 bulletin, Rithm advises as follows:

> "We are pleased to announce that Rithm Capital Corp. (Rithm) completed its acquisition of Specialized Loan Servicing LLC, (SLS) and simultaneous merger with Newrez, LLC (Newrez), an indirect wholly owned subsidiary of Rithm, on May 1, 2024".
>
> "We are excited to continue the business relationship with your company and believe that the resources of our new combined company are an opportunity for your own continued success".

7. NEWREZ LLC, now doing business under the name, Shellpoint Mortgage Servicing, continues to advance and perpetuate the fraud that began in 2019 by "SLS" while "SLS" was acting in the capacity of mortgage servicer for Plaintiff's home equity line of credit. [1]

8. Per Rithm's own acknowledgment, acquisition of "SLS" resulted in a merger. (C.R.S. Sec. 7-90-204). The irrefutable facts confirm that the acquisition was a mere continuation of existing conduct, *Alcan Aluminum Corp., Metal Goods Div. v. Elec. Metal Products, Inc.*, 837 P. 2d 282, 283 (Colo. App. 1992). which was done for the intended purpose of perpetuating a fraud. C.R.S. Sec. 38-8-101, et seq. Colorado Uniform Fraudulent Transfer Act.

---

[1] Under Colorado law a successor, (Rithm-Newrez LLC), may be held liable for the torts and liabilities of the predecessor, (SLS), when the following circumstances exist:

(1) The transaction results in a merger or consolidation of the two corporations, (entities), (2) the successor is a mere continuation of the predecessor, (3) the transaction is for the fraudulent purpose of escaping liability. *CMCB Enters., Inc. v. Ferguson*, 114 P. 3d 90, 93 (Colo. App. 2005). (modifications).

-2-

## PRE-ACQUISITION – PRE-TRANSFER

## FOUNDATIONAL FACTS

9. In 2007, Plaintiff took out a home equity line of credit with Countrywide Bank in Bowling Green, Ky, and executed a junior mortgage against his residential property as security.

10. Countrywide Bank subsequently sold, (transferred) the account to Bank of America, NA.

11. Bank of America acted as the servicer of the account until July, 2019, at which time Plaintiff received notice from Bank of America that as of August 1, 2019, Specialized Loan Servicing LLC, ("SLS"), would become the mortgage servicer for Plaintiff's account.

12. "SLS's" principal business address was 8742 Lucent Boulevard, Suite 300, Highlands Ranch, Colorado, 80129.

13. Research caused Plaintiff to conclude that "SLS" was not a reputable, or safe company with which to be associated.

14. Plaintiff contacted "SLS" and requested a payoff statement for the home equity line of credit account, and advised "SLS" that the account was being terminated. "SLS" promptly provided Plaintiff with the requested payoff statement.

15. Correspondence to, and, communication with "SLS" was directed to, and/or originated from "SLS's" address in Douglas County, Colorado, to wit., 8742 Lucent Boulevard, Suite 300, Highlands Ranch, Colorado, 80142.

16. The payoff statement indicated, *inter alia,* that the payoff amount was $25849.76.

17. Plaintiff agreed to send "SLS" a cashier's check in the amount of $25849.76, and "SLS" affirmatively agreed that upon receipt of the cashier's check, Plaintiff's obligations under the home equity line of credit would be discharged and the account would be terminated.

18. Plaintiff purchased a cashier's check in the amount of $25849.76 at South Central Bank, in Bowling Green, Kentucky. Specialized Loan Servicing LLC was the named payee.

19. Plaintiff forwarded the cashier's check by Certified Delivery, U.S. Postal Service to the address previously provided by "SLS".

20. U.S. Postal Service Certified Delivery Documents confirm that on August 30, 2019, at 10:49 am. MT, Plaintiff's cashier's check was personally delivered, received, accepted, and signed for by an "SLS" at the location of 8742 Lucent Boulevard, Suite 300, Highlands Ranch, Colorado, 80129.

21. "SLS" initially lied by saying that the check had not been delivered and received, however, in November, 2019, "SLS" admitted that the cashier's check had in fact been delivered and received as confirmed by the signed Certified Postal Certificate of Delivery.

22. "SLS's" attorney(s) also made judicial admissions and unconditionally confirmed that on August 30, 2019, "SLS" received, and took possession of Plaintiff's cashier's check as satisfaction of Plaintiff's obligations under the home equity line of credit account.

23. The delivery of Plaintiff's cashier's check on August 30, 2019, marked the payoff date of Plaintiff's obligations under the home equity line of credit. CRS 4-3-310.

24. After receiving and accepting Plaintiff's cashier's check, "SLS" then claimed that the check was lost after it was received, and, demanded that Plaintiff stop pay on the check, and send a second "replacement" check in the same amount.

25. Regardless what disposition "SLS" may, or may not have taken with regard to the cashier's check after it was received, whether the check was lost, destroyed, stolen, etc., the moment "SLS" received and took possession of Plaintiff's cashier's check, Plaintiff's obligations

-4-

under the home equity line of credit account were forthwith, and contemporaneously, completely, and entirely discharged. *Ibid.*

26. Plaintiff did not bear the risk of loss of the cashier's check after it was delivered to, and accepted by "SLS". Once the check was delivered to "SLS" risk of loss of the check rest squarely with "SLS", and, with South Central Bank, as the issuing bank of the cashier's check. CRS 4-3-312; UCC 3-312.

27. By bargaining for the use of a cashier's check as the form of payment under the payoff agreement, "SLS" also bargained to shift to the issuing bank, (South Central Bank), the risk of litigation and the accompanying risk of loss of the use of the payoff funds. See: *Stringfellow v. First American Nat. Bank,* 878 S.W. 2d 940 (1994); *Anderson Clayton Co., v. Farmers Nat. Bank* 624 F. 2d 105 (10th Cir. 1980).

28. Plaintiff did not have the power, nor the responsibility to stop pay on the cashier's check **after** it was delivered to, and accepted by "SLS". See *Saloga v. Central Kan. Cred. Union* 783 P. 2d 339 (Kan. 1989); *Cantonwine v. Fehling* 582 P. 2d 592 (Wyo. 1978); *Gillespie v. Riley Management Corp.* 59 Ill. 2d 211, 319 N.W. 2d 753 (1974).

29. Plaintiff was neither legally nor otherwise obligated, under any set of circumstances, to send "SLS" a replacement check. Plaintiff had fully performed under the terms of the payoff agreement.

30. "SLS's" refusal to discharge the obligations and terminate the home equity line of credit amounted to a deliberate, wanton and willful breach of the payoff agreement.

31. As a direct and proximate result of the predecessor, "SLS's", willful and wanton breach of the payoff agreement, in conjunction with the successors' (defendants hereto), acting in

Case No. 1:24-cv-03547-CNS-SBP   Document 1-1   filed 12/23/24   USDC Colorado
pg 6 of 7

knowing, deliberate and intentional continuation of that breach, Plaintiff has been caused to suffer and sustain injuries and damages, and will in the future continue to suffer injuries and damages.

**WHEREFORE,** Plaintiff shall later herein pray for relief specific as to the Defendants' liability as successors' (named hereto as defendants), for the predecessor's, ("SLS's") pre-acquisition breach of the payoff agreement/contract, and, the successor's knowing, deliberate, intentional, and malicious, continuation of the breach, and the injurious results and effects of that breach.

32. As a direct and proximate result of the defendants, (successors), knowing, deliberate, intentional, and malicious perpetuation and continuation of the known-to-be fraudulent breach of the payoff agreement between Plaintiff and "SLS", and the culpable acts, and actions by "SLS" having occurred thereafter, Plaintiff has been caused to suffer injuries and damages and will in the future continue to suffer injuries and damages, to include, but not limited to: physical, emotional and psychological pain and suffering, diminution in the value of the property, that was the subject of the fraud-induced breach, shortening of life expectancy due to excessive chronic anxiety, worry, loss of consortium, frustration with resulting cardiological complications, including hypertension, and other related medical conditions, medical and related expenses, past, and anticipated future, loss of enjoyment of life, loss of business opportunities, and other injuries and damages to be set forth with more specificity and particularity at trial.

**WHEREFORE,** Plaintiff hereby prays for relief as follows:

1. Judgment against defendants, each, individually and separately, and in favor of the Plaintiff, for compensatory damages, as successors to "SLS's" pre-acquisition, knowing,

deliberate, intentional, and malicious, fraudulent and deceptive, breach of the payoff agreement, and defendants' deliberate, and malicious continuation and perpetuation of the known-to-be, intentional, deliberate, and malicious culpable acts, and actions resulting from the breach of the payoff agreement.

2. Order that Plaintiff is entitled to punitive damages due to defendants' malicious conduct showing a total lack of compassion, humanity, and consideration for the Plaintiff's health, feelings, and well-being, as an 81-year old, 100% disabled individual.

3. Judgment for compensatory damages in the amount of $25,000,000.00, plus exemplary Damages in the maximum amount allowed.

4. Such other and further relief as may be deemed just in these premises as presented.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all matters so triable.

Respectfully submitted,

*/s/ James Massey*

James H. Massey,
Plaintiff pro se
440 Claypool Boyce Road
Alvaton, KY 42122
Telephone: 270-791-3528

## VERIFICATION

I, JAMES H. MASSEY, hereby certify that the contents of this Complaint are true, accurate, and complete to the best of my knowledge and information.

*/s/ James Massey*
James H. Massey